UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MORGAN DUNN O'CONNOR, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-77 |
| | § | |
| NATHAN OLIVER SMITH; aka SMITH, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day came on to be considered Plaintiff Morgan Dunn O'Connor's Motion for Summary Judgment (D.E. 29), Intervenor Plaintiff Texas General Land Office's Motion for Summary Judgment (D.E. 31), Defendant Nathan Oliver Smith's Motion to Transfer Venue (D.E. 33), and Defendant's Motion for Relief Under Rule 56(f) (D.E. 34). For the reasons set forth below, this Court GRANTS Plaintiff's Motion for Summary Judgment (D.E. 29) and Intervenor's Motion for Summary Judgment (D.E. 31), DENIES Defendant's Motion for Relief Under Rule 56(f) (D.E. 34), and DENIES as MOOT Defendant's Motion to Transfer Venue[1] (D.E. 33). Because this Court finds that the injunctions sought by Plaintiff and Intervenor are proper, Defendant's counterclaims seeking damages for "the wrongful issuance of an injunction" are MOOT. (D.E. 15; D.E. 58.)

---

[1] This Court denies Defendant's Motion to Transfer Venue as moot because it is untimely and not filed with good cause. A party "who seeks the transfer must show good cause" and act with "reasonable promptness" See In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008) (internal citation omitted); Peteet v. Dow Chemical Co., 868 F.2d 1428, 1436 (5th Cir. 1989); Salem Radio Representatives, Inc. v. Can Tel Mkt. Support Group, 114 F. Supp. 2d 553, 558 (N.D. Tex. 2000) (finding transfer would delay trial and that motion to transfer was not reasonably prompt); FTC v. Multinet Mktg., LLC, 959 F. Supp. 394, 395 (N.D. Tex. 1997) (finding delay in filing motion to transfer venue was not reasonable). In this case, Defendant moved to transfer venue more than four months after Defendant removed this case to this Court. (D.E. 33.) Defendant only sought to transfer this case after this Court held two hearings, issued a Preliminary Injunction against the Defendant, and was considering a pending Summary Judgment Motion by Plaintiff. (D.E. 4; D.E. 7; D.E. 8; D.E. 13.) Not only is the motion to transfer untimely, it was not filed in good faith. See Volkswagen, 545 F.3d at 315 (finding motion to transfer must be filed with good faith); Peteet, 868 F.2d at 1436 (finding motion to transfer must be filed with reasonable promptness). Therefore, this Court denies Defendant's Motion to Transfer as moot.

## I. Jurisdiction

This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332 because there is complete diversity between parties and the amount in controversy exceeds $75,000. Diversity exists because Plaintiff Morgan Dunn O'Connor and Intervenor Plaintiff are citizens of Texas and Defendant Nathan Oliver Smith is a citizen of California.

## II. Procedural and Factual Background

Plaintiff owns a 1,549.67 acre track of land in Refugio County, Texas, that surrounds Melon Lake. (D.E. 29, Exh. A.) Plaintiff alleges that Defendant Nathan Oliver Smith trespassed on "the land surrounding and or/underlying Melon lake, twice in 2005 and once in 2006 to search for buried treasure, and on at least one occasion he removed a piece of wood and soil samples from the property." (D.E. 1, Exh. A-2(a).) Plaintiff alleges that Defendant Smith trespassed on the land again "in 2009 as part of a news interview." (D.E. 1, Exh. A-2(a).) Defendant believes that a piece of wood he recovered from the lake came from a 19th Century Spanish vessel. In a prior federal case before Judge David Hittner, Smith sought declaratory judgment giving him title of the alleged vessel in Melon Lake. After a two day trial, Smith's case was dismissed and the court found that Smith did not establish any property rights to the alleged vessel. See Smith v. Abandoned Vessel, 610 F. Supp. 2d 739 (S.D. Tex. Apr. 27, 2009).

Plaintiff Morgan Dunn O'Connor originally filed an application for a Temporary Restraining Order ("TRO"), Temporary Injunction, and Permanent Injunction in the 24th District Court of Texas in Refugio County on March 8, 2010. (D.E. 1, Exh. A-2(a).) On March 8, 2010, the state court ordered a TRO effective until March 22, 2010 prohibiting Smith from entering Plaintiff's property. (D.E. 1, Exh. A-2(b).) Defendant removed this case to this Court alleging diversity jurisdiction. (D.E. 1, p. 2.) After a hearing, this Court entered a Preliminary Injunction

against the Defendant on March 26, 2010 prohibiting the Defendant from boring holes in Melon Lake or entering Plaintiff's property to access Melon Lake. (D.E. 13.)

### III. Discussion

#### a. Motions for Summary Judgment

Plaintiff and Intervenor seek a permanent injunction enjoining Defendant from trespassing on their land. (D.E. 29; D.E. 31.) On March 26, 2010, this Court granted a preliminary injunction, finding that Plaintiff met its burden on all four elements. (D.E. 13.) Plaintiff subsequently brought a Motion for Summary Judgment asking this Court to enter a permanent injunction. (D.E. 29.) Intervenor does not oppose Plaintiff's motion and brings its own Summary Judgment motion for a permanent injunction. (D.E. 31.) Defendant has responded to the motions, and was most recently given leave to file an additional response on September 22, 2010. (D.E. 35; D.E. 43; D.E. 62.) The Court addresses these motions below.

##### i. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Rivera v.

Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Federal Rule of Civil Procedure 56(e)(2) requires a party opposing a motion for summary judgment to "set out specific facts showing a genuine issue for trial." "Rule 56 does not impose a duty on the district court to sift through the record in search of evidence to support a party's opposition to summary judgment." Doddy v. Oxy U.S.A., 101 F.3d 448, 463 (5th Cir. 1996) (citations omitted).

The nonmovant "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2); see also First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 270 (1968). The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment"). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." Byers, 209 F.3d at 424 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

### ii. Permanent Injunction Standard

The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits as opposed to a "likelihood of success." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987); Dresser-Rand Co. v. Virtual Automation, Inc., 361 F.3d 831, 847 (5th Cir. 2004). Thus, the four elements required for a permanent injunction are: "(1) actual success on the merits of the

substantive claims; (2) a substantial threat that [plaintiff] will suffer irreparable injury if the injunction is denied; (3) that the irreparable injury outweighs any damage the injunction might cause the non-moving party; and (4) that the injunction will not disserve the public interest." Oklahoma Sur. Co. v. Williams, 483 F. Supp. 2d 541, 548 (W.D. Tex. 2006) (citing Dresser-Rand Co., 361 F.3d at 847); see also Jones, 2006 U.S. Dist. LEXIS 61605, at *11-12 (citing Amoco Prod. Co., 480 U.S. at 546 n. 12) (in order to be granted a permanent injunction, plaintiffs must show that they have succeeded on the merits, as well as "establish all of the elements required for a preliminary injunction - a substantial threat that [they] will suffer irreparable injury absent the injunction, that the threatened injury outweighs any harm the injunction might cause the defendants; and that the injunction will not impair the public interest")). This Court evaluates each element below.

### 1. Actual Success on the Merits of the Substantive Claims

"[F]or a permanent injunction to issue the plaintiff must prevail on the merits of his claim." Dresser-Rand Co. v. Virtual Automation, Inc., 361 F.3d 831, 847 (5th Cir. 2004). In this case, Plaintiff and the Intervenor bring a trespass action seeking "to restrain Defendant Smith from trespassing on and damaging" their property. (D.E. 1, Exh. A-2(a), p. 2; D.E. 19.) Under Texas law, "[t]respass occurs when one enters another's land without consent." Cate v. Woods, 299 S.W.3d 149, 154 (Tex. App. Texarkana 2009). "[E]very unauthorized entry upon land of another is a trespass even if no damage is done or the injury is slight." Marcus Cable Assocs., L.P. v. Krohn, 90 S.W.3d 697, 703 (Tex. 2002) (quoting McDaniel Bros. v. Wilson, 70 S.W.2d 618, 621 (Tex. Civ. App. Beaumont 1934); see also Coastal Oil & Gas Corp. v. Garza Energy Trust, 268 S.W.3d 1, 13 (Tex. 2008) ("Trespass against a possessory interest . . . does not require actual injury to be actionable."). The Texas Court of Civil Appeals has found that a

defendant cannot justify trespass by arguing "that the land was state land . . . so long as defendants exhibited no title." Forst v. Rothe, 66 S.W. 575, 576 (Tex. Civ. App. 1902) (finding that there "was no justification [for trespass] that the land was state land . . . so long as defendants exhibited no title").

### a. Defendant's Claim That There is a Vessel Embedded in Melon Lake is Suspect

Defendant claims that there is a nineteenth century Spanish vessel embedded in Melon Lake that he wants to excavate. This claim is suspect at best. Steven Holt, an archeologist who interviewed Defendant, found "[Smith's] claims are often outlandish, contradictory and seemingly unfounded." (D.E. 46, Exh. C.) As detailed by counsel during the preliminary injunction hearing, Defendant believes there is a vessel in Melon Lake because of something he saw in satellite images provided by Google Maps. However, even though Defendant claims he saw evidence of the shipwreck from satellite images, he now asserts that he needs to bore holes into the lake to determine where the vessel is located. This Court agrees with Steven Holt, that "[s]kepticism [about Defendant's claims] is healthy." (D.E. 46, Exh. C.) However, even assuming Defendant's assertion that there is a vessel in Melon Lake is true, this Court finds Defendant has failed to show any right to excavate that vessel.

### b. Defendant seeks to Trespass on The Land Underlying Melon Lake, which is Owned by Either Plaintiff or Intervenor

It is undisputed that the land underlying Melon Lake is owned by either the Plaintiff or the State of Texas.[2] If the land underlying Melon Lake is found to be underneath navigable

---

[2] Defendant argues that this Court cannot enter a permanent injunction because it is unclear whether Plaintiff or the Intervenor owns the land underneath Melon Lake. (D.E. 35, p. 3-6.) Defendant makes no assertion, however, that he is the true owner of the land underneath Melon Lake or that there is another party, other than Plaintiff or Intervenor, that is the actual owner of the lake. This Court follows the Texas Court of Civil Appeals decision in Frost that finds a defendant cannot justify trespass by arguing "that the land was state be land." See Forst, 66 S.W. at

waters, the land belongs to the State of Texas.³ See Cummins v. Travis County Water Control & Improvement Dist. No. 17, 175 S.W.3d 34, 48 (Tex. App. Austin 2005) ("As with all navigable bodies of water within Texas, the State owns the beds and waters."). If the land underlying Melon Lake is not underneath navigable waters, the land belongs to Plaintiff. See Cummins, 175 S.W.3d at 48 (Tex. App. Austin 2005) ("As with all navigable bodies of water within Texas, the State owns the beds and waters."). Both Plaintiff and the State of Texas seek to enjoin Defendant from trespassing on the land underlying Melon Lake. (D.E. 29; D.E. 31.) Defendant makes no claim that he has title to the land underlying Melon Lake. However, Defendant still seeks to bore holes into the lake and excavate an alleged early nineteenth century Spanish vessel. See Smith v. Abandoned Vessel, 610 F. Supp. 2d 739, 743 (S.D. Tex. 2009). Such action, entry onto another persons land without permission, constitutes trespass. Marcus Cable Assocs., L.P., 90 S.W.3d at 703 ("[E]very unauthorized entry upon land of another is a trespass even if no damage is done or the injury is slight."). For the reasons discussed below, this Court finds that Defendant has no right to salvage the alleged abandoned vessel, no matter if Plaintiff or Intervenor owns the underlying land.

---

576. Here, it is clear that Defendant does not have title to the land in and around Melon Lake. The potential owners of Melon Lake, the Intervenor and Plaintiff, both seek to enjoin Defendant from trespassing on the property. (D.E. 29, D.E. 31.) This Court thus finds that the Intervenor and Plaintiff have shown that Defendant intends to enter on land in which he has exhibited no title. Such action constitutes trespass, which Plaintiff and Intervenor may seek remedy. Marcus Cable Assocs., L.P., 90 S.W.3d at 703.

³ The Court notes that different standards apply with regard to determining whether a body of water is navigable. Smith v. Abandoned Vessel, 610 F. Supp. 2d 739, 749 (S.D. Tex. 2009) ("There are several definitions of navigability, each one of which has been developed for a particular judicial or administrative purpose."); see also Kaiser Aetna v. United States, 444 U.S. 164, 171-72 n.7 (1979). In Smith v. Abandoned Vessel, Judge Hittner made a determination that for the purpose of admiralty jurisdiction, Melon Lake was located on navigable waters. See 610 F. Supp. 2d 739, 747-8 ("[T]he Court must first answer is whether the location of the alleged vessel is reachable by a navigable waterway the United States so as to invoke this Court's admiralty jurisdiction."). Judge Hittner did not determine whether the waters of Melon Lake are navigable under Texas law for the purpose of determining ownership. Id. Indeed, such a determination would be inappropriate because it would effect the rights of the Intervenor who was not part of that action. Id. Thus, Intervenor and Plaintiff are not precluded by res-judicata from making a claim of ownership to the land beneath Melon Lake. See Oreck Direct, LLC v. Dyson, Inc., 560 F.3d 398, 401 (5th Cir. 2009) (finding for res judicata to bar a claim, the parties must be identical and the same claim must be involved). However, for the reasons discussed in this Order, determination of the ownership of the lakebed is not necessary at this time.

### c. Defendant has No Right to Salvage the Vessel if the Land Underlying Melon Lake is Owned by the Intervenor

Assuming that the Intervenor owns the land underlying Melon Lake, Defendant claims he has a right to excavate the alleged vessel because: (1) the law of salvage gives him the right to excavate and, alternatively, (2) the State of Texas consented to Plaintiff's excavation. These arguments are flawed.

First, if the land underlying Melon Lake belongs to the state, federal law clearly establishes that Defendant has no right to salvage any alleged buried shipwreck in that land without the state's consent.[4] (D.E. 35, p. 6.) Federal law specifically states that the law of salvage does not apply to vessels that are embedded in state land. See 43 U.S.C. §2106(a) (stating when an abandoned ship is embedded in land "[t]he law of salvage and the law of finds shall not apply"). Instead, vessels that are embedded in state land belong to the state. See 43 U.S.C. §2105. Defendant's claim fails because it is undisputed that the alleged vessel is "embedded in land," which in turn triggers 43 U.S.C. § 2105 granting title of the vessel to the State of Texas.[5]

Second, Defendant alternatively argues that the State of Texas granted Defendant permission to enter onto Melon Lake. (D.E. 46, p. 6-9.) This argument is not persuasive. There

---

[4] The law of salvage requires that the salvaged vessel be located on navigable waters and does not give salvagers an affirmative right to trespass on private property. See Smith v. Abandoned Vessel, 610 F. Supp. 2d 739, 756-58 (S.D. Tex. Apr. 27, 2009). Indeed, Defendant makes no contention that the law of salvage would apply in this case if the alleged vessel was located entirely on Plaintiff's property. Thus, if the vessel Defendant seeks to salvage is not located on navigable waters, Defendant would not be able to use the law of salvage as a defense to his trespass. Thus, this section addresses the issue of whether Defendant has a right to salvage the vessel if the vessel is located in navigable waters.

[5] A ship is embedded in land when it is "firmly affixed in the submerged lands . . . such that the use of tools of excavation is required in order to move the bottom sediments to gain access to the shipwreck, its cargo, and any part thereof." See 43 U.S.C. §2102(a). Defendant admits in his answer that recovering the abandoned vessel "will involve the removal and replacement of soil." (D.E. 15, p. 2.) Indeed, to determine the location of the alleged vessel, Defendant included maps in his application to the U.S. Army Corps that indicate where he intends to bore holes into the lake bed. (D.E. 29, Exh. D.) Thus, it is clear that if this alleged vessel exists, the vessel is "embedded in land." Because the alleged vessel in Melon Lake is embedded in land, the law of salvage is unavailable as a valid defense to Plaintiff and Intervenor's trespass claim. See 43 U.S.C. §2106(a).

is no evidence that the Intervenor expressly gave Defendant permission to salvage a vessel from Melon Lake. As discussed below, Defendant's claim that the Intervenor consented to the trespass is misinformed.

Defendant improperly relies on two pieces of evidence to establish consent. First, Defendant relies on an application to a state agency, the Texas Historical Commission (the "Commission"), seeking a permit for an archeological investigation. (D.E. 62, Exh. D-3.) Texas law requires that consent to investigate a shipwreck on state land be expressed through a contract or permit from the state. See TEX. NAT. RES. CODE. § 191.053 (outlining procedure where salvager can contract with state to investigate ship wrecks); TEX. NAT. RES. CODE. § 191.054 (outlining procedure where salvager can receive a permit from the state to investigate ship wrecks). A mere application for a permit is not sufficient to show that Defendant was given consent. On July 26, 2010, the Commission denied as incomplete Defendant's initial application and informed Defendant how he could properly re-apply for a permit. (D.E. 62, Exh. D-3.) ("Upon review, your permit application is considered incomplete."). Defendant does not claim he ever received a permit or contract from the state to salvage the alleged shipwreck. No reasonable jury could read a denial of an application to conduct an archeological investigation as consent.

Second, Defendant relies on the U.S. Army Corps permit as evidence that the Texas General Land Office gave consent to excavate Melon Lake. (D.E. 46, p. 6-9.) This argument not only lacks merit but is also disingenuous. A plain reading of the U.S. Army Corps permit shows that no reasonable person could understand that the federal permit is tantamount to the state giving the applicant permission to enter land. In fact, the U.S. Army Corps permit specifically states that it "does not convey any property rights, either in real estate or material, or

any exclusive privileges." (D.E. 29, Exh D.) The application to the U.S. Army Corps of Engineers also states that "[t]he applicant's signature on an application is an affirmation that the applicant possesses or will possess the requisite property interest to undertake the activity proposed in the application." (D.E. 29, Exh. D.) By signing the application, the applicant attests that he has a right to excavate the property at issue. (D.E. 29, Exh. D.) However, in this case, Defendant had no such right to excavate and thus should not have signed the application.

Defendant's application to the US Army Corps of Engineers ignores the fact that Defendant did not have title to the land in and around Melon Lake and that his application with the State of Texas was denied as incomplete. Defendant's lawsuit seeking a declaratory order establishing a right to excavate the alleged vessel failed, with a final judgment finding that Defendant did not establish any such right. See Smith v. Abandoned Vessel, 610 F. Supp. 2d 739, 756-58 (S.D. Tex. Apr. 27, 2009). A reasonable jury could not conclude that a federal permit, which expressly states that the permit "does not convey any property rights," confers the Plaintiff with state consent to trespass on Melon Lake. (D.E. 29, Exh. D.) Thus, this Court finds that if the land underlying Melon Lake belongs to the State of Texas, Defendant has no right to trespass on that land and salvage an alleged shipwreck.

### d. Defendant has No Right to Salvage the Vessel if the Land Underlying Melon Lake is Owned by the Plaintiff

It is undisputed that Plaintiff is the owner of the land surrounding Melon Lake. (D.E. 29, Exh. A.) In her Motion for Summary Judgment, Plaintiff includes a survey and affidavit from a licensed land surveyor that shows she owns all the land surrounding Melon Lake. (D.E. 29, Exh. A.) If the land underlying Melon Lake is not under navigable waters, Plaintiff would also own that land. See Cummins, 175 S.W.3d at 48 (discussing that the state of Texas only owns the beds and waters of "navigable bodies of water"). Defendant could not use the law of salvage as a

defense for trespass on Plaintiff's lake because the law of salvage only applies when "the alleged vessel is reachable by a navigable waterway." See Smith, 610 F. Supp. 2d at 749 (discussing law of salvage and admiralty law jurisdiction).

Furthermore, it is undisputed that Plaintiff has never consented to Defendant's intended trespass. Defendant does not claim that Plaintiff consents to his activities. (D.E. 15.) Plaintiff has opposed Defendant's intended salvage from the beginning by filing a successful opposition to Defendant declaratory judgment action seeking title of the alleged vessel. See Smith, 610 F. Supp. 2d 739. Thus, if the land underlying Melon Lake is not on navigable waters and belongs to the Plaintiff, Defendant would have no right to salvage an alleged vessel.

Defendant has failed to show he has any right to excavate an abandoned shipwreck on someone else's property. Defendant has no cognizable possessory interest in the land in and around Melon Lake. Both parties which have shown a possessory interest in the land seek to enjoin Defendant from unlawful trespass. (D.E. 1, Exh. A-1(a); D.E. 19.) Defendant admits that he still intends to excavate the alleged shipwreck. (D.E. 15.) This is an admission that Defendant intends to trespass and to "enter[] another's land without consent." See Cate, 299 S.W.3d at 154. Thus, Plaintiff and Intervenor have met their burden of showing actual success that Defendant intends to trespass on the property around and surrounding Melon Lake.

### 2. Substantial Threat of Irreparable Injury

"It is the established law in this state that if one is in possession of certain premises, and thereby capable of using and enjoying them, and another wrongfully attempts to invade this possession or to destroy the use and enjoyment of such premises, [the plaintiff] may resort to a court of equity and secure an injunction restraining the wrongdoer, for there is available to him no plain and adequate remedy at law." Southern Pine Lumber Co. v. Smith, 183 S.W.2d 471,

472 (Tex. Civ. App. Galveston 1944). Plaintiff and Intervenor have demonstrated that Defendant seeks to invade their property. By seeking permits and investors, Defendant has taken substantial steps to attempt to salvage an alleged vessel from Melon Lake. (D.E. 7.) Defendant has admitted to removing artifacts from the lake even though ownership interests are unclear. (D.E. 1, Exh. A-2(a), p.2.) Defendant has expressly stated that he intends to "recover an abandoned vessel" in Melon Lake with a process that "will involve the removal and replacement of soil." (D.E. 15, p. 2.) These activities may result in irreparable harm whereby Defendant could trespass on the area in and around Melon Lake and bore holes that could result in the property never being restored back to its original form. Under Texas law, an injunction restraining these activities is the adequate remedy. See Southern Pine Lumber Co., 183 S.W.2d at 472 (finding an injunction to prevent trespass is adequate remedy).

### 3. Threat of Injury Outweighs Damage

Plaintiff and Intervenor have also demonstrated that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted. Defendant intends to salvage a ship from Melon Lake without authority. (D.E. 15, p. 2.) Neither Plaintiff nor Intervenor has given Defendant expressed permission to conduct such activity. A prior court decision has found that Defendant does not have a right to salvage the vessel. See Smith v. Abandoned Vessel, 610 F. Supp. 2d 739 (S.D. Tex. Apr. 27, 2009). Furthermore, pursuant to 42 U.S.C. §2105, any ship embedded in the soil of navigable waters is the property of Texas, not the Defendant. See, e.g., Zych v. Unidentified, Wrecked & Abandoned Vessel, Believed to be SB "Lady Elgin", 746 F. Supp. 1334, 1351 (N.D. Ill. 1990). While courts have found that this statute may punish a "[salvager] who expanded considerable time and resources" to find the wreck and reward a state that "sat idly by, showing no interest in the wrecks" until it was found,

courts reason this law is fair because "[t]here is nothing to prevent divers and salvors from reaching agreements with the appropriate states in advance." Id. at 1351. Defendant has provided no evidence of any such agreement with the state. Therefore, under 42 U.S.C. §2105, Defendant has no right to salvage the vessel and an injunction preventing him from such action would cause him no harm.

The injunction also mitigates injury to Defendant by allowing Defendant to continue using the navigable waters of the lake for lawful purposes. At the same time, the injunction prohibits Defendant from unlawful trespass on the property, including the unauthorized boring of holes and excavation of an alleged vessel embedded in the lake. Thus, this Court finds any injury from this injunction is outweighed by the interests of preventing trespass of the property, and preventing the potentially improper taking of property from Melon Lake.

### 4. Injunction Will Not Disserve Public Interest

The right to prevent trespass is a longstanding right in Texas derived from English Common Law and the Texas Constitution. First Nat'l Bank v. Levine, 721 S.W.2d 287 (Tex. 1986) (discussing "judicial history and its treatment of the tort of 'trespass'."). Texas has interpreted the tort strictly, finding "every unauthorized entry upon land of another is a trespass even if no damage is done or the injury is slight." Marcus Cable Assocs., L.P. v. Krohn, 90 S.W.3d 697, 703 (Tex. 2002) (quoting McDaniel Bros. v. Wilson, 70 S.W.2d 618, 621 (Tex. Civ. App. Beaumont 1934)). Defendant has failed to show he has a competing right to salvage the alleged vessel from Melon Lake. Indeed, when Smith brought suit to receive title of the alleged vessel, his claims were tried and dismissed by Judge Hittner. See Smith v. Abandoned Vessel, 610 F. Supp. 2d 739 (S.D. Tex. Apr. 27, 2009). It is in the public interest to prevent trespass and maintain the status quo. See In re Grand Jury Subpoena, 419 F.3d 329, 338 (5th Cir. 2005)

(discussing "broader public interests in the observance of law"); Collins v. Ainsworth, 382 F.3d 529, 538 (5th Cir. 2004) (discussing "the public interest in crime prevention"); Federal Trade Com. v. Southwest Sunsites, Inc., 665 F.2d 711, 716 (5th Cir. 1982) (finding "that it would be in the public interest to maintain the status quo").

The injunction does not disserve the public interest because it will not affect the public's right to lawfully use the navigable waters of Melon Lake. The injunction merely prevents the Defendant from activity he has no right to conduct, trespassing on private property and salvaging an alleged embedded vessel on land that he does not own. Thus, this Court finds a preliminary injunction will further that public interest by preventing trespass, maintaining the status quo, allowing entry onto Melon Lake through navigable waters and by preventing the unauthorized boring of holes and salvage of an alleged vessel in Melon Lake.

### 5. Summary Judgment Should be Granted

For the reasons states above, this Court finds that the Plaintiff and Intervenor have met their burden of showing a permanent injunction is appropriate to prevent Defendant from trespassing on Melon Lake. It is clear that Defendant intends to salvage an alleged vessel from Melon Lake without permission. (D.E. 15, p. 2.) Defendant has persisted despite being denied a permit from the state, losing an action for declaratory judgment in federal court, and being sued by Plaintiff and Intervenor to prevent trespass. Defendant has failed to show that there is any question of material fact whereby this injunction should be denied.

### b. Motion for Relief Under Federal Rule of Civil Procedure 56(f)

On the same day Defendant filed his response for summary judgment, Defendant brought a Rule 56(f) motion seeking a stay on the ruling of the summary judgment order. (D.E. 33.) This motion is analyzed below.

### i. Standard for Federal Rule of Civil Procedure 56(f) Motions

Rule 56(f) is "an alternative to opposing summary judgment by affidavit and is 'designed to safeguard against a premature or improvident grant of summary judgment.'" Brown v. Miss. Valley State Univ., 311 F.3d 328, 333 n. 5 (5th Cir. 2002) (citing Washington v. Allstate Ins. Co., 901 F.2d 1281, 1284-85 (5th Cir. 1990)). "[A] request to stay summary judgment under Rule 56(f) must 'set forth a plausible basis for believing that specified facts, susceptible to collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010). "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." Access Telecom, Inc. v. MCI Telecom. Corp., 197 F.3d 694, 720 (5th Cir. 1999).

### ii. Defendant Does Not Establish that Further Discovery is Likely to Create a Genuine Issue of Material Fact

Defendant Smith requests a stay to conduct discovery to (1) "develop relevant evidence regarding ownership of the land where the vessel may be located" and (2) develop evidence to see whether Texas consented to Defendant's trespass of Melon Lake. (D.E. 34, p. 4.) To continue the deadline for a response to a motion for summary judgment until after further discovery is completed "[a] party opposing summary judgment under Rule 56(f) must demonstrate (1) why additional discovery is needed and (2) how the additional discovery will likely create a genuine issue of material fact." Brown v. Miss. Valley State Univ., 311 F.3d 328, 333 n. 5 (5th Cir. 2002) (citing Sterns Airport Equip. Co. v. FMC Corp., 170 F.3d 518, 535 (5th Cir. 1999).

Regarding evidence as to where the alleged vessel is located, Defendant has failed to show how these facts "will influence the outcome of the pending summary judgment motion."

See Raby, 600 F.3d at 561. No matter where the vessel is located in and around Melon Lake, Defendant has no right to salvage it. Defendant's lawsuit for declaratory judgment to establish that right was tried and dismissed. See Smith v. Abandoned Vessel, 610 F. Supp. 2d 739 (S.D. Tex. Apr. 27, 2009). Defendant has established no right to trespass on Plaintiff's land. Further, Defendant has failed to establish a right to salvage the vessel if it is the property of the State of Texas. See 42 U.S.C. § 2105 et al.; TEX. NAT. RES. CODE. § 191.054 ("Sunken or abandoned pre-twentieth century ships and wrecks of the sea, and any part or the contents of them, and all treasure imbedded in the earth, located in, on, or under the surface of land belonging to the State of Texas, including its tidelands, submerged land, and the beds of its rivers and the sea within jurisdiction of the State of Texas, are declared to be state archeological landmarks and are eligible for designation."); see, e.g., Zych v. Unidentified, Wrecked & Abandoned Vessel, Believed to be SB "Lady Elgin", 746 F. Supp. 1334, 1351 (N.D. Ill. 1990). Thus, this Court finds that the location of the alleged vessel in and around Melon Lake has no bearing on the outcome of this action and discovery on this issue is not necessary for this Court to make its determination.

Regarding evidence as to whether the State of Texas consented to Defendant's trespass on Melon Lake, Defendant has failed to show how additional discovery will create a genuine issue of material fact. In a trespass action, it is the defendant's burden to prove the affirmative defense of consent. See Ward v. Northeast Tex. Farmers Co-op Elevator, 909 S.W.2d 143, 150 (Tex. App. Texarkana 1995). A state cannot consent by silence, estoppel, waiver or other equitable theory. See Texas Co. v. State, 281 S.W.2d 83, 88-89 (Tex. 1955); Ellis v. Holcombe, 69 S.W.2d 449, 454 (Tex. Civ. App. Galveston 1934). The consent must be expressed.

According to Texas law, the consent to salvage or investigate an abandoned ship or landmark must be by contract or by permit from the state. See TEX. NAT. RES. CODE. § 191.053 (stating "the committee may contract with . . . qualified private institutions, corporations, or individuals for the discovery and scientific investigation of sunken or abandoned ships or wrecks . . ."); TEX. NAT. RES. CODE. § 191.054 (stating "[t]he committee may issue a permit to . . . to qualified private institutions, companies, or individuals for the survey and discovery, excavation, demolition, or restoration of, or the conduct of scientific or educational studies at, in, or on landmarks, or for the discovery of eligible landmarks on public land if it is the opinion of the committee that the permit is in the best interest of the State of Texas."). Here, Defendant does not claim he ever entered into a contract with the state or received a permit from the state granting him the right to salvage the alleged vessel. The evidence sought by Defendant, communication between the U.S. Army Corps and the State of Texas, cannot establish consent.[6] See Texas Co., 281 S.W.2d at 88-89; Ellis, 69 S.W.2d at 454. The correspondence between Defendant and the State of Texas clearly shows that Texas denied Defendant's application to conduct an investigation of the alleged wreck as incomplete. (D.E. 63, Exh. D-3 (finding that "[u]pon review, your permit application is considered incomplete.").) Defendant has failed to show how additional discovery would create any question of fact.

This Court also finds that it has given Defendant substantial time to present evidence in support of its response to the summary judgment motions. See Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010) (finding discovery must occur within a "reasonable time frame" under

---

[6] Even if this Court found the communication between the U.S. Army Corps and the Commission relevant, there is not even a scintilla of evidence supporting Defendant's contention that the evidence would support his defense. One communication Defendant included as summary judgment evidence was an email from Steven Holt, a Commission archeologist, discussing the permit process noting "Skepticism [about Smith's claims] is healthy" and that "[Smith's] claims are often outlandish, contradictory and seemingly unfounded." (D.E. 46, Exh. C.) This does not support Defendant's claims that Texas consented to the trespass on Melon Lake.

Rule 56(f)). On September 22, 2010, the Court granted Defendant's motion for leave to supplement the summary judgment record. (D.E. 60.) To date, Defendant has had more than seven months since this case was removed to conduct discovery. However, Defendant still has not presented to this Court any evidence that would lead a reasonable jury to find that Plaintiff or Intervenor consented to trespass. Defendant has also failed to show that any additional discovery would likely create a question of material fact. Therefore, Defendant's Rule 56(f) motion to stay summary judgment is denied.

## IV.     Conclusion

For the reasons set forth above, this Court this Court GRANTS Plaintiff's Motion for Summary Judgment (D.E. 29) and Intervenor's Motion for Summary Judgment (D.E. 31), DENIES Defendant's Motion for Relief Under Rule 56(f) (D.E. 34), and DENIES as MOOT Defendant's Motion to Transfer Venue (D.E. 33). Because this Court finds that the injunctions sought by Plaintiff and Intervenor are proper, Defendant's counterclaims seeking damages for "the wrongful issuance of an injunction" are MOOT. (D.E. 15; D.E. 58.)

Pursuant to this Court's granting Plaintiff's Motion for Summary Judgment (D.E. 29), this Court ORDERS that Defendant Nathan Oliver Smith and anyone acting on his behalf are permanently enjoined from entering inland from the shoreline of any of the navigable waterways within the property described as Share No. 3, Tracts 1 and 2 in Exhibit A unless he has express permission from the owner of such property. Defendant Nathan Oliver Smith and anyone acting on his behalf are further permanently enjoined from boring, digging, excavating or otherwise disturbing the submerged lands underlying Melon Lake or from removing soil or other materials embedded within those submerged lands unless he has express permission from the owner of the

property described as Share No. 3, Tracts 1 and 2 in Exhibit A, or the Commissioner of the Texas General Land Office.

Pursuant to this Court's granting of Intervenor's Motion for Summary Judgment (D.E. 31), this Court ORDERS that Defendant Nathan Oliver Smith be permanently enjoined from excavating, probing, or digging into the soil of any land that belongs to the State of Texas, including land underlying any navigable waters of Melon Lake or into any other land or property that the State of Texas may own, without the State of Texas's express permission or consent and from removing any tangible items from the State of Texas's property or otherwise belonging to the State of Texas without the State of Texas's express permission or consent.

SIGNED and ORDERED this 28th day of October, 2010.

_____
Janis Graham Jack
United States District Judge